IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF WESTERN TEXAS
WACO DIVISION

CLINT WALKER,

                Plaintiff,

vs.                                     Case No. 6:24-cv-00633-ADA

JOHN DOE,

                Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Interlocutory/Preliminary Injunction, which was supported by the declarations of Clint Walker and Daniel Nordin, pursuant to Federal Rule of Civil Procedure 65, and Plaintiff's Complaint for Damages and Injunctive Relief. Plaintiff seeks a temporary restraining order ("TRO") pursuant to Rule 65(b). Upon consideration of the Motion, the submissions of Plaintiff, and the record in this case, the Court HEREBY GRANTS the Motion and enters the following Order:

### I.     BACKGROUND[1]

Plaintiff Clint Walker ("Plaintiff") has owned USAA Bank savings and checking accounts for a number of years. (Walker Decl. ¶ 3.) Plaintiff is a resident of Waco, TX. (Walker Decl. ¶ 2.) USAA Bank has its principal place of business in San Antonio, TX. Chase Bank has its principal place of business in New York, NY.

On September 11, 2024, Plaintiff received a call from a telephone number with a 726 area code, which corresponds to the area of San Antonio where USAA Bank is headquartered. (Walker

---

[1] The facts set forth herein are not findings of ultimate fact, but are only findings that the evidence presented is sufficient to support the grant of injunctive relief.

Decl. ¶ 4.) The caller ("Defendant" or "John Doe") claimed to be from the USAA fraud department and alleged suspicious activity on Plaintiff's USAA banking accounts. (Walker Decl. ¶ 4.)

Defendant sent Plaintiff a text message with a link to "verify" the alleged fraudulent transactions. (Walker Decl. ¶ 4.) Plaintiff followed the link and logged in with his USAA banking username and password, and was shown three transactions which Plaintiff told the caller were not transactions he completed. (Walker Decl. ¶ 5.) However, this was not a legitimate USAA website and in addition to being part of John Doe's deception was also a ruse for obtaining Plaintiff's USAA account username and password. (Walker Decl. ¶ 6.)

Defendant informed Plaintiff the transactions stemmed from a J. P. Morgan Chase Bank branch in Waco, TX, and told Plaintiff to physically go to the bank branch before closing otherwise Plaintiff's account would be frozen for a few weeks for investigation. (Walker Decl. ¶ 6.) Plaintiff agreed to Defendant's instructions for fear of losing access to his banking accounts for an extended period of time. (Walker Decl. ¶ 7.)

Defendant instructed Plaintiff to use his USAA checking account debit card to make a cash advance deposit into a Chase Bank account with the corresponding account number: XXXXXX8662 ("Chase Bank Account"). (Walker Decl. ¶ 8.) Defendant claimed this transaction was necessary to trace the fraudulent transactions and catch the alleged fraudster. (Walker Decl. ¶ 8.)

Defendant further claimed the deposit must be at least $20,000 to constitute a felony charge for the alleged fraudster. (Walker Decl. ¶ 11.) Defendant claimed they would deposit the $20,000 into Plaintiff's checking account so Plaintiff would not use his own funds for this transaction. (Walker Decl. ¶ 11.) Defendant instructed Plaintiff to check his USAA checking account to verify the $20,000 deposit had been made and Plaintiff verified such a deposit appeared to have been made in his checking account. (Walker Decl. ¶ 11.)

However, Defendant had actually logged into Plaintiff' USAA banking account with the username and password obtained via the fraudulent USAA site and transferred $20,000 from Plaintiff's savings account to the checking account. (Walker Decl. ¶ 11.) Therefore, the deposit of $20,000 into Plaintiff's checking account was, in fact, Plaintiff's own personal savings funds. (Walker Decl. ¶ 11.)

Plaintiff, believing the $20,000 deposit was from USAA Bank and fearing loss of access to vital funds, continued to follow Defendant's instructions and made the cash advance deposit to the Chase Bank Account. (Walker Decl. ¶ 12.) After the transaction was complete, Defendant claimed Plaintiff's debit card was locked and that USAA Bank would be sending Plaintiff a replacement card at no extra charge. (Walker Decl. ¶ 12.)

Later in the day, Plaintiff contacted USAA Bank and was told he was the victim of a scam. (Walker Decl. ¶ 13.) Plaintiff also visited the Chase Bank branch to speak with and alert the bank manager of the scam, and filed a police report with the Waco, TX, police department. (Walker Decl. ¶¶ 14-15.)

As a result, Plaintiff's savings funds in the amount of $20,000 have been stolen and have yet to be recovered due to Defendant fraudulently inducing Plaintiff to deposit $20,000 into the Chase Bank Account. (Walker Decl. ¶ 16.)  Plaintiff does not know the identity of the owner of the Chase Account. Plaintiff has filed claims for violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), for fraud, for money had and received, for civil conspiracy, and for permanent injunctive relief.

As to the need for *ex parte* nature of the relief Plaintiff seeks, the Declaration of Daniel Nordin, counsel for Plaintiff, is submitted in support thereof. As set forth in that declaration, in light of the complex nature of the scheme involved, giving prior notice of the TRO to Defendant or

banks holding funds from the fraud will result in the funds going beyond the reach of the parties and Court process. (Nordin Decl. ¶ 9.)

## II.     STANDARD OF REVIEW

Plaintiff seeks an *ex parte* temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, which provides in relevant part as follows:

(b) Temporary Restraining Order.

(1)      Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
(A)      specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
(B)      the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P 65(b).

The United States Supreme Court has recognized that in some limited situations, a court may properly issue *ex parte* orders of brief duration and limited scope to preserve the status quo pending a hearing. *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974); *Carroll v. Princess Anne*, 393 U.S. 175, 180 (1968).

The limited nature of *ex parte* remedies:

reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, cf. Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 180 . . . (1968), but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Granny Goose Foods*, 415 U.S. at 438-39 (emphasis in original).

Rule 65(b) directs the Court to look to the specific facts shown by sworn testimony to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. Additionally, the Court must determine whether the movant establishes the following factors required

to grant a preliminary injunction: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

## III.    LEGAL DISCUSSION

### A.    PROBABILITY OF SUCCESS ON THE MERITS.

The Fifth Circuit instructs the Court to consider the substantial likelihood of Plaintiff's success on the claims in a preliminary injunction analysis. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985). "An evaluation of plaintiff's likelihood of success on the merits entails two questions: the proper standard to be applied in evaluating [plaintiff's] claims; and the application of this standard to the facts presented." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 334 (5th Cir. 1981).

The Court must consider the substantive claims in determining whether Plaintiff has a likelihood of success on the merits. Plaintiff asserts claims for civil RICO, fraud, unjust enrichment, constructive trust, civil conspiracy, and injunctive relief against Defendant. Plaintiff asserts that Defendant is the owner of the Chase Bank Account and is the person who directed the alleged fraudulent scheme to divert funds from Plaintiff's USAA Bank Account to the Chase Bank Account.

The Court finds that Plaintiff has a strong likelihood of success on their claims against the Defendant. Based on the limited record before the Court, it appears that Defendant committed predicate acts under RICO of wire fraud, mail fraud, and money laundering, engaged in fraud and deceit, has been unjustly enriched, diverted and converted Plaintiff's personal savings funds through the use of a false identity and hacking of Plaintiff's personal banking accounts, and have engaged in a civil conspiracy to deceive Plaintiff and fraudulently obtain funds from Plaintiff. (Walker Decl.)

These claims, if true, are actionable under RICO. 18 U.S.C. § 1961, *et seq.* (civil RICO); 18 U.S.C. § 1962(c) (RICO renders it unlawful for any person to directly or indirectly engage in conduct of an enterprise through a pattern of racketeering activity); 18 U.S.C. § 1964(c) (private right of action for persons injured by RICO violations); 18 U.S.C. § 1961(1) (wire fraud, mail fraud, and money laundering are predicate acts under RICO); 18 U.S.C. § 1956(a)(2)(A) (money laundering), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud).

The allegations would also support claims under Texas law for fraud, unjust enrichment, constructive trust, and civil conspiracy. *Gray v. Waste Res., Inc.*, 222 S.W.3d 522, 524 (Tex. App. 2007) ("The elements of fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation intending that the other party act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury."); *Reg'l Specialty Clinic, P.A. v. S.A. Randle & Assocs., P.C.*, 625 S.W.3d 895, 904 (Tex. App. 2021) ("A party may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."); *Freeman v. Harleton Oil & Gas, Inc.*, 528 S.W.3d 708, 733 (Tex. App. 2017) ("'A constructive trust is a creation of equity intended to prevent a wrongdoer from profiting from his wrongful acts.'"); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) ("An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.").

Plaintiff produced testimony to support all of the foregoing causes of action. (Walker Decl.) If Plaintiff's allegations of obtaining funds under false pretenses prove to be true, then these claims

have a strong likelihood of success. The Court finds the "likelihood of success on the merits" factor strongly weighs in favor of issuance of an *ex parte* temporary restraining order.

### B.    IRREPARABLE HARM.

Plaintiff must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is "harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." *Canon, Inc. v. GCC Int'l, Ltd.*, 263 F. App'x. 57, 62 (Fed. Cir. 2008).

An award of money damages against parties who would, as alleged by Plaintiff, use false identities and unauthorized access to Plaintiff's bank account to fraudulently induce Plaintiff's to transfer funds, would likely be worthless and not sufficient to remedy injury to the Plaintiff. If these allegations are true, then the perpetrators of such a scheme will launder funds to bring them beyond the reach of the Court. (Nordin Decl. ¶¶ 8-9.) While monetary relief is a remedy, it is not an adequate legal remedy under these circumstances. *Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940) (legal remedy inadequate without recourse to funds in the hands of defendant where assets were "in danger of dissipation and depletion"); *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (danger of depletion or dissipation of assets a factor to consider in whether plaintiff has shown irreparable harm).

The Court finds the injury to Plaintiff is irreparable in the absence of issuance of a temporary restraining order because, in light of the nature of the scheme alleged, the funds which Plaintiff contends were obtained under false pretenses will, more likely than not, be moved beyond the reach of Plaintiff and the Court absent immediate Court intervention. (Walker Decl.; Nordin Decl.) The Court finds the "irreparable harm" factor strongly weighs in favor of issuance of an *ex parte* temporary restraining order.

### C.    BALANCE OF HARMS.

As outlined above, Plaintiff has demonstrated the threat of irreparable harm. The balance of harms factor requires consideration of the balance between the harm to the movant and the harm the

injunction's issuance would inflict on other interested parties. *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009).

At this early stage, Plaintiff has clearly demonstrated a strong likelihood of success on the merits and a real threat of irreparable harm. Based on the limited record before the Court, it does not appear that the temporary restraining order Plaintiff seeks will harm Defendant, the accountholder of the Chase Bank Account and who directed the scheme alleged by Plaintiff. The record shows that Defendant has no relationship with Plaintiff nor USAA Bank, where Plaintiff's personal savings funds were kept. Plaintiff alleges that Defendant fraudulently received a deposit of funds originating from Plaintiff's USAA Bank Account under false pretenses. Any harm from having the Chase Bank Account funds frozen as well as other assets to allow discovery as to where Plaintiff's funds were transferred for fourteen days is substantially outweighed by the risk of harm of dissipation of the Plaintiff's funds. The Court finds the "balance of harms" factor strongly weighs in favor of issuance of an *ex parte* temporary restraining order.

D.     PUBLIC INTEREST.

The final factor, the "public interest" factor, invites consideration of the equities by the Court which "involves weight the public interest against the injury to the parties from the grant or denial of injunctive relief." *Int'l Paper Co. v. Harris Cnty.*, 445 S.W.3d 379, 395 (Tex. App. 2013). Public policy disfavors allowing perpetrators of fraud to obtain funds under false pretenses, and disfavors allowing such actors to keep or dissipate these funds. The Court finds the "public interest" factor strongly weighs in favor of issuance of an *ex parte* temporary restraining order.

E.     *EX PARTE* NATURE OF THE ORDER.

Rule 65 of the Federal Rules of Civil Procedure requires that counsel for the movant certify in writing the efforts made to give notice or the reasons why notice should not be required. Counsel for Plaintiff Clint Walker, Daniel Nordin, filed a declaration attesting that providing advance notice

to Defendant and to the bank to which Plaintiff's funds were transferred, would frustrate the Plaintiff's ability to obtain relief. (Nordin Decl.)

Plaintiff has demonstrated a substantial risk that Defendant, if notified of these proceedings prior to this Order becoming effective, will abscond with the funds transferred to the Chase Bank Account. Therefore, it is appropriate to issue this Order *ex parte* under F. R. C. P 65(b). (See *Katerra, Inc. v. Paragon Constr. Co., LLC*, No. 3:21-CV-914-L, 2021 WL 1574698, at *1 (N.D. Tex. Apr. 22, 2021).

### IV.   TERMS OF TEMPORARY RESTRAINING ORDER

The Court has reviewed the entire record and the factors for granting an *ex parte* Temporary Restraining Order and finds the Plaintiff has met its burden under Rule 65(b) of establishing the necessity of an *ex parte* temporary restraining order at this early stage of the litigation.

THEREFORE, the Court GRANTS the Motion for a Temporary Restraining Order and enters the following injunction:

1.    The holders, beneficial owners, and authorized users of the Chase Bank Account with account number xxxxxx8662 (the "Enjoined Account") and all persons acting in concert and in active participation with the foregoing, including but not limited to the financial institution(s) holding such accounts that receive actual notice of this Order by service of process or otherwise, ARE HEREBY ENJOINED, without prior approval from the Court from distributing, withdrawing, transferring, disposing of, converting, secreting any money, negotiating funds, allowing distributions, allowing withdrawals, allowing transfers, and allowing negotiation of funds in or from the Enjoined Account or any proceeds from the Enjoined Account received on or after July 11, 2024.

2.    The holders, beneficial owners, and authorized users of all other accounts in the names of one or more of the holders, beneficial owners, and authorized users of the Chase Bank Account (the "Additionally Enjoined Accounts") and all persons acting in concert and in active participation

with the foregoing, including but not limited to the financial institution(s) holding such accounts that receive actual notice of this Order by service of process or otherwise, ARE HEREBY ENJOINED, without prior approval from the Court from distributing, withdrawing, transferring, disposing of, converting, secreting any money, negotiating funds, allowing distributions, allowing withdrawals, allowing transfers, and allowing negotiation of funds in or from the Additionally Enjoined Account or any proceeds from the Additionally Enjoined Accounts received on or after July 11, 2024.

3.      The Court limits the amount of funds that may be frozen in any one individual account or asset to the sum of $20,000.

## V.      FURTHER PROCEEDINGS

The Court FURTHER ORDERS as follows:

1.      A videoconference hearing is set before this Court on January 17, 2025, at 11:00 a.m. via Zoom videoconference regarding the status of the injunction, unless any party requests an earlier hearing.

2.      Plaintiff is directed to provide a copy of this Order to the known enjoined parties and non-parties as soon as feasible, but no later than five days prior to the hearing. Because Plaintiff does not know the name of the holder of the Chase Bank Account, upon receiving a copy of this Order, J. P. Morgan Chase Bank shall notify the holder of the Chase Bank Account of this Order and provide a copy of this Order to the holder of the account.

3.      At the hearing, Plaintiff shall be prepared to show cause why this Order should be extended two additional weeks. The Defendant and any non-parties may appear and show cause why this Order should not be extended.

4.      If this Court extends the term of this Order subsequent to the January 17 hearing, it will do so by written order which sets another videoconference hearing on January 31, 2025. At that

hearing, Plaintiff shall be prepared to show cause why a preliminary injunction should be issued. If Plaintiff fails to do so, "the court must dissolve the [restraining] order." Fed. R. Civ. P. 65(b)(3).

5.     At the January 31 hearing, Plaintiff shall be prepared to show cause why a preliminary injunction should be issued. If Plaintiff fails to do so, "the court must dissolve the [restraining] order." Fed. R. Civ. P. 65(b)(3).

6.     At the January 31 hearing, the Defendant and any non-parties enjoined shall be prepared to show cause why they should not be preliminarily enjoined during the pendency of this action.

7.     At any time, the Defendant and any non-parties enjoined may file a motion to dissolve or modify this temporary restraining order in accordance with Rule 65(b)(4) of the Federal Rules of Civil Procedure. They may also contact the Court to modify the time or date of the scheduled hearing.

8.     This Temporary Restraining Order will become effective, as to each party and non-party enjoined, upon delivery of notice of the Order on each such person and entity by service of process or other method reasonably calculated to give notice. Fed. R. Civ. P. R. 65(a).

9.     Plaintiff shall promptly file proof of service or other such notice with the Court.

10.     Plaintiff shall promptly notify the Court of the amount of funds found and frozen pursuant to the terms of this Order.

11.     In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, Plaintiff shall post with the Court registry a bond of **$200**, in cash or other form of payment acceptable to the Clerk of Court for this Order to be effective. In the event that Defendant appears to contest the relief sought herein, they will have an opportunity to request that the Court set a higher bond amount at the hearing.

12.     In accordance with Rule 65(b)(2) of the Federal Rules of Civil Procedure, this Order expires in 14 days at the same hour of this Order, "unless before that time the Court, for good cause, extends it for a like period or the adverse party consents to a longer extension."

**IT IS SO ORDERED and SIGNED** this 3rd day of January, 2025.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE